MOORE, Circuit Judge,
dissenting.
Respectfully, I dissent. I would affirm the district court’s construction of all but one claim term and affirm the judgment of infringement in favor of the patentee. While I agree with the district court’s construction under a de novo standard of review, I note that were any deference given, this would surely be a case in which the lower court construction should be affirmed. Because my colleagues deviate from the plain meaning of these claim terms, I respectfully dissent.
I.
With regard to claim 16 of the '459 patent and elsewhere where this term appears,[1] the majority holds that the term “plurality of different data formats” is limited to still images — that it does not include multiple or moving images. The district court held that the plain meaning of this language included both still image file formats and moving (movie) image file formats. The district court held that the plain and ordinary meaning of “data format” is “the arrangement of digital data in a file, including image, audio, text or other data and includes, at least, MPEG, JPEG, GIF, TIFF, PICT, BMP, JFIF, DCF, TXT, DOC, WPD and WAV.” I see no error in the district court’s construction (and Fujifilm does NOT appeal that construction). The term “plurality of different data formats” is broad and the plain meaning would certainly include movie file formats such as MPEG. Moreover, the specification EXPRESSLY names MPEG and DVI compression (used for movies) as “an alternative embodiment of the present invention.” '459 patent col. 10 11.46-59; see also id. col.8 11.35-37.
The majority bases its narrowing of the plain meaning on the repeated use of the words still and image in the patent. Even though still appears often, the specification also lists MPEG and DVI as an alternative embodiment. Unlike SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc., 242 F.3d 1337 (Fed.Cir.2001), or other such cases, there is no narrowing language in this specification to justify narrowing the claim scope. Here, the claim language at issue is “plurality of different data formats.” The plain meaning of this language includes MPEG (which all parties agree is a data format), and the specification discloses MPEG/DVI as an alternative embodiment of the invention. I believe the district court’s construction was correct and I would affirm the determination of infringement of this claim.
II.
Fujifilm also appealed the construction of the following terms: “a plurality of computer image file formats” in claims 1 and 3 of the '899 patent; “plurality of computer *279 formats” in claim 1 of the '010 patent; “a plurality of different data file formats for different types of computer apparatus” in claim 10 in the '219 patent; “a plurality of different data formats for different types of information handling systems [apparatus]” in claims 1 [and 16] of the '219 patent; and “plurality of different data formats for different types of computer apparatus” in claim 16 of the '459 patent. Based on the district court’s construction, a jury found infringement.
As an initial matter, the majority erred because it claims that “the district court concluded that the parties agreed to construe the claims consistently across all four patents.” Maj. Op. at 272, 275. The record shows no such agreement and no such statement by the district court. The district court stated that “the parties agree that the terms and phrases of the various patents should be construed consistently.” Read in context, the district court was explaining that the parties agreed to construe similar terms and phrases consistently, not entire claims or dissimilar phrases. The district court gives an example of phrases that the parties agreed should have the same construction: “plurality of different data formats for different types of computer apparatus” and “a plurality of different data formats for different types of information handling systems.” I can agree that these phrases are similar.
I cannot agree, however, that a “plurality of different data formats for different types of computer apparatus” is similar to “a plurality of computer file formats,” and St. Clair clearly argues that they should be construed differently. Appellee’s Br. 24. I believe therefore that St. Clair is entitled to have this court independently construe each term. For me, at least, such a process leads to different constructions.
For claims which contain the language “a plurality of different file formats for different types of computer apparatus” or “a plurality of different data formats for different types of information handling systems,” I agree with the majority, these terms refer to a data format for use with a particular architecture. The term “plurality of different file formats” includes all the different files formats discussed above and the term “for different types of computer apparatus” implicates the different computer architectures. Therefore these claims are limited to different file formats for different architectures by their plain language.
This “for different types of computer apparatus” limitation, however, does not appear in the claims at issue in the '010 and '899 patents. Those claims recite formatting a digital image signal “in one of a plurality of computer formats” and “in one of a plurality of computer image file formats.” Because the inventors omitted the “for different types of computer apparatus” limitation, the plain language of those claims is broader. In my opinion, neither the specification nor the prosecution history supports importing such a limitation into these claims.
I do not agree that the specification includes clearly narrowing language as in SciMed. On the contrary, the specification explains that JPEG “was developed in 1985 in response to the lack of interoperability between image and processing equipment due to numerous proprietary standards held by each manufacturer.” '459 patent col.10 11.33-39. In addition to its express disclosure of the platform-independent JPEG and MPEG standards, the specification discusses PICT and GIF formats. As Fujifilm’s own expert explained, although PICT files were “most often” used by Apples and “some applications” on IBMs could read GIFs, those file types *280 were not exclusively limited to particular architectures. He further explained that, at the time of filing, some applications for both Apples and IBMs could read those file formats.
I also do not agree with the majority’s reliance on the reexamination history because St. Clair did not clearly disavow claim scope during reexamination. On the contrary, during reexamination of the '010 and '889 patents, St. Clair traversed the examiner’s narrow claim construction prior to overcoming the asserted art. During reexamination of the '459 and '219 patents, the examiner confirmed all claims on the first office action. Hence, St. Clair argued nothing in these reexaminations that could be construed as a disavowal. In fact, in a post-allowance submission, St. Clair made clear its view that these terms were not limited in the manner the majority now does.
Thus, I conclude that the majority erred in its construction of a “plurality of computer image formats.” First, it erred in not construing that term separately from the for different architectures term. Second, it erred by importing a limitation regarding computer architecture into a claim which had no such limitation. As I believe the district court construction of these file format terms is correct, I would affirm the judgment of infringement.

. This term or a similar one appears in claim 16 of the '459 patent, claims 1, 10 and 16 of the '219 patent, claim 1 of the '010 patent and claims 1 and 3 of the '899 patent. All four patents have the same specification.